UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID FORTNEY and ELI TRIPLETT, | ) | Case No. 2:19-cv-04209 |
| *individually and on behalf of all those* | ) | |
| *similarly situated*, | ) | Judge Edmund A. Sargus |
| | ) | |
| Plaintiffs, | ) | Magistrate Judge Kimberly A. Jolson |
| | ) | |
| v. | ) | |
| | ) | **UNOPPOSED MOTION FOR** |
| WALMART INC., | ) | **APPROVAL OF FAIR LABOR** |
| | ) | **STANDARDS ACT COLLECTIVE** |
| Defendant. | ) | **ACTION SETTLEMENT** |

Representative Plaintiffs David Fortney and Eli Triplett, on behalf of themselves and the Opt-In Party Plaintiffs (Representative Plaintiffs and Opt-In Party Plaintiffs together referred to as "Plaintiffs"), by and through their respective counsel, respectfully submit this Unopposed  Motion for Approval of Fair Labor Standards Act ("FLSA") Collective Action Settlement. Defendant Walmart Inc. ("Walmart" or "Defendant") (Plaintiffs and Defendant together referred to as the "Parties") does not oppose this Motion, and does not oppose approval of the Settlement consistent with the terms of the Parties' Agreement.  In support of this Motion are the following:

Exhibit A:     Joint Stipulation of Settlement and Release;

Exhibit B:     Proposed Order of Dismissal and Approving Settlement; and

Exhibit C:     Declaration of Matthew S. Grimsley, Esq.

The Parties request that the Court enter an Order, as proposed in Exhibit B, approving the Settlement as fair and reasonable.  Such relief is appropriate for the reasons that follow.

1

## I. INTRODUCTION

Plaintiffs seek approval of the proposed FLSA Settlement reached between the Parties and memorialized in the Joint Stipulation of Settlement and Release ("Settlement" or "Agreement").[1] attached as Exhibit A. The proposed Settlement will resolve *bona fide* disputes involving unpaid wage claims under the FLSA. Because the proposed Settlement is an FLSA settlement for employees who have already opted in, as opposed to a Rule 23 opt-out settlement that would bind absent class members, **no fairness hearing is required or requested by the Parties**. The Parties respectfully submit that the proposed Settlement is fair and reasonable and satisfies the criteria for approval under § 216(b) of the FLSA.[2] The Settlement was achieved during arms-length negotiations among the Parties, conducted by experienced counsel, and with the assistance of an experienced mediator.

The following sections explain the nature of the lawsuit, the negotiations, the Settlement's principal terms, and the propriety of approving the Settlement.

## II. BACKGROUND

### A. **Background**

On September 21, 2019, Representative Plaintiffs David Fortney and Eli Triplett initiated this collective action against Defendant as a result of Defendant's alleged practices and policies of failing to pay Service Technicians and employees performing substantially identical functions and/or duties as Service Technicians for all hours worked, including overtime compensation at the rate of one and one-half times their regular rates of pay for the hours they worked over 40 each

---

[1] Unless otherwise noted, terms used herein have the same definitions as in the Agreement.
[2] Walmart disputes Plaintiffs' allegations, and disputes that the claims alleged are appropriate for class or collective treatment. Walmart joins this motion and does not object to approving the settlement as fair and reasonable for settlement purposes only, and consistent with the terms of the Parties' Settlement.

2

workweek, in violation of the FLSA, 29 U.SC. 201-219. (ECF 1)[3] Specifically, Plaintiffs allege that Defendant required them and other similarly situated employees to be responsive to off-the-clock questions, requests, and/or inquiries during their unpaid meal breaks. Plaintiffs allege that this resulted in them and other similarly situated employees being denied a "bona fide" meal break pursuant to 19 C.F.R. § 785.19, and because they were regularly scheduled for fulltime, 40 hour workweeks, the time spent working during their meal periods should have been recorded as overtime for which they should have been paid at the rate of one and one-half times their regular rates of pay. (*See Id.* at PAGEID #4-6.)

Defendant has denied Plaintiffs allegations, denies that the claims asserted in the Action have merit, deny that Plaintiffs were improperly compensated, and contend, *inter alia*, that the alleged unpaid work was *de minimis* and otherwise not compensable under the FLSA. Defendant further denies that the claims alleged are suitable for class-wide or collective treatment, other than for purposes of settlement.

On March 3, 2020, Plaintiffs filed their Motion for Conditional Certification, Expedited Opt-In Discovery, and Court-Supervised Notice to Potential Opt-In Plaintiffs, along with supporting declarations of the Representative Plaintiffs and the early Opt-In Plaintiffs. (ECF 31.) Walmart subsequently took depositions of Representative Plaintiff David Fortney, Representative Plaintiff Eli Triplett, and Opt-In Plaintiff Chad Palmer (ECF 138, 139, 140), and then filed its Opposition to Plaintiffs' Motion for Conditional Certification (ECF 38), after which, Plaintiffs filed their Reply (ECF 39).

---

[3] Plaintiffs also brought a claim under the Ohio Minimum Fair Wage Standards Act on behalf of a putative Rule 23 class (*see* ECF 1) but did not move for Rule 23 class certification. Instead, the Parties have agreed to settle this matter on behalf of the persons who opted in to the FLSA collective.

On January 22, 2021, the Court granted Plaintiffs' Motion for Conditional Certification. (ECF 49.) Following the Court's Order granting conditional certification, the Parties negotiated a Notice Plan and agreed to limit the scope of the putative FLSA collective (and thus, limit the scope of individuals to whom notice would be issued) to *full-time* employees. (ECF 60.) The Court ultimately approved the Parties' Notice Plan and amended proposed Notice (ECF 60-1), thereby authorizing notice to:

> All individuals employed at Walmart Tire & Auto locations in positions, job titles, job codes, job classifications of "Automotive Technician and all other similar nomenclature including but not limited to, Tire & Auto Specialist" and other positions in Walmart Tire & Auto locations) performing substantially identical functions and/or duties, currently or formerly employed by Defendant Walmart, Inc. and/or its predecessors or successors in interest in the United States between 3 years prior to the filing of this suit and the date of final judgment in this matter who were employed full time in such positions. This includes all full-time Walmart Tire & Auto employees who are subject to Defendant Walmart's meal break policy.

(ECF 60-1 - Revised Proposed Notice; ECF 61 - Order Approving Proposed Notice.)

Thereafter, the Court-approved Notice was sent to the more than 51,000 current and former employees who fell within the scope of the collective definition, as provided on the list that Walmart produced. (ECF 54 at ¶ 6; ECF 60 at ¶ 3). The Court-approved Notice informed the recipients thereof, *inter alia*:

> If you join this Action, you designate the named Representative Plaintiffs as your agents to make decisions on your behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning fees and costs, the entering into a settlement agreement with Walmart and all other matters pertaining to this Action.
>
> **The named Plaintiffs in this matter have entered into a contingency fee agreement with Plaintiffs' counsel, which means that if there is no recovery, there will be no attorneys' fees or costs chargeable to you.** If there is a recovery of wages, liquidated damages, and/or attorneys' fees and costs, Plaintiffs' counsel will be paid whatever attorneys' fees and costs the Court orders or approves as fair and reasonable. The fees and costs will

4

> either be subtracted from the total recovery obtained from Walmart in the amount of thirty-three and one-third percent (33-1/3%) of your total recovery, plus costs expended by Plaintiffs' counsel on your behalf, or they may be paid separately by Walmart. If there is no recovery, Plaintiffs' counsel will not be paid for their work on this case.

(ECF 60-1).

In addition to the Representative Plaintiffs, there are currently 2,803 Opt-In Plaintiffs who joined this Action by executing and submitting written Consent Forms in which they agreed to be "bound by the Judgment of the Court on all issues in this Action." (*Id*.)

After the notice period ended, Walmart filed a Motion to Dismiss the claims of the out-of-state Opt-In Plaintiffs (ECF 137), which Plaintiffs opposed (ECF 141). On March 11, 2022, this Court entered an Order denying Walmart's Motion to Dismiss. (ECF 148.)

Thereafter, the Parties engaged in informal discovery. Walmart produced employment information for Representative Plaintiffs and the Opt-In Plaintiffs, including dates of employment for each Plaintiff and time and pay records for a sampling of 300 randomly selected Plaintiffs. (Ex. C at ¶ 16.) Walmart also served a questionnaire upon a randomly selected group of Opt-In Plaintiffs. (*Id*.) On August 30, 2022, the Parties attended a JAMS mediation session with Retired Judge Morton Denlow. (*Id*. at ¶ 17.) Unable to reach a settlement during that mediation, the Parties subsequently proceeded to engage in further discovery. (*Id*. at ¶ 17-18.)

Between September 2022 and June 2023, the Parties engaged in substantial formal discovery, including serving and responding to extensive Interrogatories and Requests for Production of Documents. Plaintiffs propounded Interrogatories and Requests for Production of Documents upon Walmart, and Walmart propounded Interrogatories and Requests for production of Documents upon Representative Plaintiffs and multiple sets of Interrogatories upon numerous Opt-In Plaintiffs. The Parties also engaged in further deposition discovery. Walmart took the

depositions of six (6) additional Opt-In Plaintiffs, and Plaintiffs took the deposition of Walmart's designated Rule 30(b)(6) deponent.  (*Id*. at ¶ 18.)

Following the close of phase two fact discovery, on June 26, 2023, Walmart filed a Motion to Decertify Plaintiffs' Collective FLSA Claims (ECF 169). Thereafter, on July 31, 2023, Plaintiffs filed their Opposition to Walmart's Motion to Decertify (ECF 180), and on August 3, 2023, Plaintiffs filed a Motion to Strike certain declarations submitted with Walmart's Motion (ECF 181). On August 28, 2023, Defendant filed its Reply in Support of its Motion to Decertify (ECF 185), as well as its Opposition to Plaintiffs' Motion to Strike Declarations (ECF 184), and on September 6, 2023, Plaintiffs filed a Reply in Support of Plaintiffs' Motion to Strike (ECF 187).

By October 2024, the Parties agreed to revisit settlement discussions again through mediation, and filed a Joint Motion to Stay the Case, including consideration of Walmart's Motion to Decertify, which the Court granted. (*See* ECF 190, 191, 195, 197, 199).

On March 4, 2025, the Parties participated in mediation with Mediator Frank Ray of Frank A. Ray Co. LPA. Following that mediation session, Mr. Ray continued settlement discussions between the Parties, and the Parties ultimately reached an agreement to settle the Action on the terms set forth in the Agreement.  (Ex. A at ¶ 24; Ex. C at ¶ 21.)

### B.    The Settlement Terms

If approved by the Court, the Settlement will cover Representative Plaintiffs and the 2,803 Opt-In Plaintiffs. The Total Settlement Amount is $1,400,000.00, which will cover: (a) all of the Individual Payments to Plaintiffs; (b) Representative Plaintiffs' Service Award Payments; and (c) Plaintiffs' Counsel's Attorneys' Fees and Expenses; and (d) the Cost of Settlement Administration. (Ex. A at ¶ 29.)

Pursuant to the Agreement, $842,497.86 of the Total Settlement Amount will be divided into Individual Payments to the Plaintiffs. (*Id*. at ¶ 29.) In exchange, the Plaintiffs will release all federal and state wage-and-hour claims that were or could have been asserted in this Action. (*Id*. at ¶ 37.) The Individual Payments are provided in Appendix 1 of the Settlement. The Individual Payments were calculated by Plaintiffs' Counsel using the employment records Defendant produced, including each Plaintiffs' employment dates and the time and pay records of the sample group. The individual payments are allocated proportionally based on Plaintiffs' Counsel's calculation of each Plaintiff's alleged overtime damages during the Calculation Period and assuming the three (3) year statute of limitations applies. (*Id*. at ¶ 32; *see also* Ex. C at ¶ 37-38.) Moreover, Plaintiffs who are owed less than $25.00, will receive a minimum payment of $25.00. (Ex. A at ¶ 31.)

Pursuant to the Agreement, a total $20,000.00 of the Total Settlement Amount will be paid as Service Award Payments to Representative Plaintiffs. Specifically, $10,000.00 will be paid as a Service Award Payment to Representative Plaintiff David Fortney, and $10,000 will be paid as a Service Award Payment to Representative Plaintiff Eli Triplett. The Service Award Payments to Representative Plaintiffs are in addition to their Individual Payments, for their respective services in this litigation, and in exchange for entering into a general release of claims against Defendant. (*Id*. at ¶ 34.)

Pursuant to the Agreement, one-third of the Total Settlement Amount ($466,666.66) will be paid to Plaintiffs' Counsel for attorneys' fees and an additional $47,335.48 for expenses incurred in this case. (*Id*. at ¶ 35.)

Lastly, $23,500.00 of the Total Settlement Amount will be paid to the third-party Settlement Administrator (*Id*. at ¶ 36), and the Settlement will be administered in the manner

described in Sections 44-55 of the Settlement Agreement.

### III.    THE SETTLEMENT SHOULD BE APPROVED

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 16(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Enterprises, Inc.*, No. C2-05-500, 2008 WL 2468868, *1, n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982); *see also, Perry v. Krieger Beard Servs., LLC,* No. 3:17-cv-161, 2020 WL 13786611, *1 (S.D. Ohio July 9, 2020).

Because the proposed Settlement is an FLSA settlement for Opt-In Party Plaintiffs who have affirmative opted-in—as opposed to a Rule 23 *opt-out* settlement that would bind absent class members—no fairness hearing is requested by the Parties, "[n]or is the Court required to hold one." *Batista v. Tremont Enterprises*, No. 1:19CV361, 2019 WL 3306315, *1, n. 1 (N.D. Ohio July 22, 2019); *see also Moore v. Ackerman Inv. Co*., C 07-3058-MWB, 2009 WL 2848858 (N.D. Iowa Sept. 1, 2009); *Barnes v. Benzerenterprises, Inc*., 607-cv-1754, 2008 WL 4059839 (M.D. Fla. Aug. 27, 2008). Instead, "[a] one-step settlement approval process is appropriate", as FLSA settlements under Section 216(b) do not implicate the same due process concerns as do Rule 23 actions." *Koszyk v. Country Financial a/k/a CC Services, Inc.,* No. 16 Civ. 3571, 2016 WL 5109196, *1 (N.D. Ill. Sept. 16, 2016); *see also Jones v. Agilysys, Inc.*, 2014 WL 108420, at *4 (N.D. Cal. Jan. 10, 2014) .

As shown herein, approval of the Settlement is warranted on all scores.

### A.    The Settlement satisfies the standard for approval.

An FLSA settlement should be approved if the Court concludes that "it is a fair and reasonable resolution of a bona fide dispute" between the parties. *Lynn's Food Stores*, 679 F.2d at 1355; *see also, Brittmon v. Upreach LLC*, No. 2:17-cv-219, 2018 WL 7889855, *1 (S.D. Ohio

Nov. 8, 2018). "If a settlement in an employee FLSA suit reflects 'a reasonable compromise over issues,' such as FLSA coverage or computation of back wages that are 'actually in dispute,' the court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation." *Gentrup v. Renovo Services, LLC*, No. 1:07cv430, 2011 WL 2532922, *2 (S.D. Ohio June 24, 2011) (quoting *Lynn Foods Stores, Inc.*, 679 F.2d at 1354).

"The existence of a *bona fide* dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA." *Andrus v. DenOne, LLC*, No. 1:19-cv-00259, 2019 WL 13195500, *1 (N.D. Ohio 2019).

Other factors Courts consider are: "(1) the risk of fraud or collusion behind the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the plaintiff's likelihood of success on the merits; and (5) the public interest in settlement." *Brittmon*, 2018 WL 7889855, *1; *see also Andrus*, 2019 WL 13195500, *1. "The court may choose to consider only factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Brittmon*, 2018 WL 7889855, *1 (quoting *Gentrup*, 2011 WL 2532922, *8). Here, all factors favor approval.

As an initial matter, a *bona fide* dispute certainly exists between the Parties. In fact, there are several issues in dispute—the outcome of which remains uncertain—that could significantly impact this case if it were further litigated. (Ex. A at ¶ 22; Ex. C at ¶ 31.) The Parties dispute, *inter alia*, whether Defendant violated the FLSA; whether the alleged unpaid work performed by Plaintiffs was compensable under the FLSA such that Plaintiffs are entitled to overtime compensation; the amount of time Plaintiffs spent performing the alleged unpaid work and whether it was *de minimis*; and whether this case can be maintained as a collective action. Moreover, while Defendant contends that Plaintiffs could not succeed on the merits of their claims, even if they

could, the Parties also dispute whether Defendant has a good faith defense that would preclude an award of liquidated damages, and whether Defendant's conduct was willful, and thus, whether the two-year or three-year statute of limitations applies. (*Id.*) Thus, a *bona fide* dispute certainly exists.

All other factors likewise favor approval.

First, there is no risk of fraud or collusion as the Settlement was negotiated at arms-length, after extensive research, factual investigation, legal debates, discussions, and correspondence, and after good faith bargaining with the assistance of an experienced mediator. (Ex. A at ¶ 24; Ex. C at ¶ 21.) *See Moore v. Aerotek, Inc.,* No. 2:15-CV-2701, 2017 WL 2838148, *3 (S.D. Ohio June 30, 2017) ("Absent evidence to the contrary, courts presume that a class settlement is the result of arm's length negotiations and is not the product of fraud or collusion."), report and recommendation adopted, No. 2:15-CV-2701, 2017 WL 3142403 (S.D. Ohio July 25, 2017); *Hainey v. Parrot,* 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) ("the participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties.").

Second, "wage and hour class and collective actions, such as this, are inherently complex and time-consuming." *Arledge v. Domino's Pizza, Inc.,* No. 3:16-cv-386, 2018 WL 5023950, *2 (S.D. Ohio Oct. 17, 2018) (citing *Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 WL 3447947, *7 (S.D. Ohio July 11, 2014)). This case is certainly no exception. As discussed above, several factual and legal issues are in dispute in this case. If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling.  On the one hand, if litigation proceeded, and the Court denied Defendant's pending Motion to Decertify, then the Parties would be required to engage in briefing on motions for summary judgment, extensive expert discovery, and extensive trial preparation. The trial of this matter would be complex and factually intensive

10

with respect to both liability and damages, and any final judgment would likely be appealed. On the one hand, if the Court granted Defendant's pending Motion to Decertify, then the numerous Opt-In Plaintiffs would have start over and file separate individual lawsuits, which would be extremely costly for both sides.

Third, this matter has already been litigated for over (5) years, and the parties engaged in substantial discovery, including extensive written discovery, employment data, and depositions of the two (2) Representative Plaintiffs, seven (7) Opt-In Plaintiffs, and Walmart's Rule 30(b)(6) designee. (Ex. C at ¶¶ 11, 18, 27.) The Parties also engaged in substantial motion practice, including but not limited to briefing on Plaintiffs' Motion for Conditional Certification, Defendant's Motion to Dismiss, and Defendant's Motion to Decertify Plaintiffs' Collective FLSA Claims. (*Id.* at ¶ 28.) At the time of settlement all aspects of the dispute were well-understood, and the legal issues in this case were vehemently argued by both sides. (*Id*. at ¶ 30.)

Fourth, the likelihood of Plaintiffs' success on the merits and the amount of the Settlement in relation to the potential recovery also favors approval. As noted above, a *bona fide* dispute exists as to whether Defendant has any liability in this case. The outcome of further litigation is uncertain for Plaintiffs, and the risks of continued litigation are evident for both sides. For example, if the Court or jury determined that the alleged unpaid work was *de minimis* or otherwise not compensable under the FLSA, Plaintiffs would be entitled to no recovery. Or, if the Court decertified the collective, Opt-In Plaintiffs would have to start over and file separate lawsuits and incur separate costs and fees associated therewith, with no guarantee of success. The Settlement, on the other hand, guarantees Plaintiffs a substantial recovery promptly and efficiently without the attendant risks and delay. The Total Settlement Amount equals approximately 122% of the Plaintiffs' wage damages, assuming 15% of their meal periods were interrupted with work (which

11

Defendant disputes), that such time was compensable under the FLSA (which Defendant disputes), and the three-year statute of limitations applies (which Defendant disputes). (*Id*. at ¶ 39.)

Fifth, public policy favors settlement of class and collective action lawsuits. *See Arledge* 2018 WL 5023950, *2 (citing *Swigart*, 2014 WL 3447947, *4); *Barnes v. Winking Lizard, Inc.,* No. 1:18CV952, 2019 WL 1614822, *4 (N.D. Ohio Mar. 26, 2019).

Sixth, Plaintiffs are represented by counsel with substantial experience litigating wage and hour collective actions (s*ee* Ex. C), and Plaintiffs' Counsel agrees that the Settlement is a fair, reasonable, and adequate compromise of disputed claims, and is in the best interests of the Plaintiffs (*Id*. at ¶ 33).

Additionally, all components of the proposed distribution are proper and reasonable. The Individual Payments (provided in Appendix 1 of the Settlement Agreement) were allocated on a pro-rata basis, with a minimum payment of $25.00 to the Plaintiffs who would otherwise recover less than $25.00. (Ex. A at ¶ 31; Ex. C at ¶ 37.) Accordingly, the Settlement is a fair, adequate, and reasonable resolution of a bona fide legal dispute, and should be approved.

**B.** **The agreed upon payment of attorneys' fees and reimbursement of expenses to Plaintiffs' Counsel should be approved.**

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). The attorney's fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of the Act. *See Id.* As the Sixth Circuit stated, the provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir.

12

1994). "There is no numeric relationship required between the amount of economic losses recovered and the amount of fees recoverable. Thus, it is not uncommon for fee awards to exceed the amount recovered by plaintiffs in lost wages." *Schraufl v. Riverside Local School Dist.*, No. 1:19-CV-00175, 2019 WL 13171421, *1 (N.D. Ohio 2019).

Here, the requested payment to Plaintiffs' Counsel for attorneys' fees—which equal one-third of the settlement fund—is certainly reasonable and should be approved.

In common fund settlements of wage and hour cases (like this one), this Court and other Court's in this Circuit routinely award one-third **or more** of the total settlement amount for attorneys' fees. *See Bleich v. Cleveland Brewing Company, LLC*, No. 1:21-cv-01891, 2022 WL 2185024, *2 (N.D. Ohio May 16, 2022) ("In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund."); *Waters v. Pizza to You, L.L.C.*, No. 3:19-cv-372, 2022 WL 404614, *4 (S.D. Ohio Feb. 9, 2022) ("Counsel's request of one-third of the common fund 'is a normal fee amount in a wage and hour case.'"); *Brittman v. Upreach LLC*, No. 2:17-cv-219, 2018 WL 7889855 (S.D. Ohio Nov. 8, 2018) (awarding Plaintiffs' counsel 40% of total settlement amount for attorney fees plus costs); *Rodriguez v. Life Time Fitness*, No. 2:18-cv-01123, 2021 WL 9096176 (S.D. Ohio May 17, 2021) (awarding Plaintiffs' counsel 40% of the settlement fund); *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-0729, 2012 WL 1945144, *9 (S.D. Ohio May 30, 2012) (awarding 52% of maximum settlement fund to counsel in wage and hour case); *Smith v. SAC Wireless, LLC*, No. 20-10932, 2022 WL 1744785 (E.D. Mich. May 31, 2022) (granting Plaintiffs' counsel's request for attorneys' fees constituting one-third of the total settlement amount, in addition to reimbursement for litigation costs); *Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.,* No. 1:16-CV-448, 2017 WL 5247538, *5-6 (S.D. Ohio Nov. 13, 2017) (awarding one-third of total settlement fund); *Swigart v. Fifth Third Bank*, No. 1:11-CV-

88, 2014 WL 3447947, *6 (S.D. Ohio July 11, 2014) (awarding 33% of $4,000,000 settlement fund in wage and hour case); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, *1 (N.D. Ohio Mar. 8, 2010) (approving one-third of fund where there was a recovery constituting one-third of claimed unpaid wages; litigation risks and significant work expended; and a contingency arrangement); *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 WL 2490989, *3, 7, 8 (N.D. Ohio, June 15, 2010) ("The amount of the contingency, one-third of the total award, is also reasonable and has been approved in similar FLSA collective actions in this judicial district."); *Bessey v. Packerland Plainwell, Inc.*, No. 4:06-cv-95, 2007 WL 3173972, *4 (W.D. Mich. 2007) (one-third attorneys' fee approved).

Moreover, the attorneys' fees requested are certainly reasonable in light of the substantial benefit achieved for the Plaintiffs. Again, the Total Settlement Amount equals approximately **122%** of the Plaintiffs' wage damages, and that is assuming an average of 15% of meal periods were spent performing unpaid work (which Defendant disputes), that such additional time was compensable (which Defendant disputes), and the three-year (as opposed to two-year) statute of limitations applies (which Defendant disputes). (Ex. C at ¶ 49.) "In the Sixth Circuit, the recovery in wage and hour cases is typically 7-11%." *Myres v. Hopebridge, LLC,* No. 2:20-CV-5390, 2023 WL 2399056, *5 (S.D. Ohio Feb. 21, 2023); *see also*, *Smith v. SAC Wireless, LLC*, No. CV 20-10932, 2022 WL 1744785, *3 (E.D. Mich. May 31, 2022) (same); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1609, 2010 WL 776933, *8 (N.D. Ohio Mar. 8, 2010) (same). In *Dillworth*, this Court concluded that a recovery of one-third of the wages allegedly owed, *before* deducting attorney's fees and costs, is "well above" average. *Dillworth*, 2010 WL 776933, at *8. In *Rotuna v. W. Customer Mgt. Group, LLC*, 4:09CV1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010), this Court explained that a recovery of 25% to 75% of claimed wages as "exceptional."

14

*Id*. at *8. Measured against that standard, the Settlement in this case is certainly a great result for the Plaintiffs.

Moreover, the complexity of this litigation certainly favors approval of the requested fees. "Wage-and-hour collective actions are, by their nature, complicated and time-consuming." *See Barnes v. Winking Lizard, Inc.,* 2019 WL 1614822, *2 (N.D. Ohio Mar. 26, 2019) (citing *Swigart v. Fifth Third Bank*, 2014 WL 3447947, *7 (S.D. Ohio July 11, 2014); *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, *3 (S.D. Ohio Aug. 17, 2018) ("[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them"). This case—which has been in litigation for five (5) years and six (6) months, in which there nearly 1,800 Plaintiffs, and which settled after the Parties completed substantial fact discovery and briefing on decertification—is certainly no exception.

Further, Plaintiffs' Counsel undertook representation under a one-third contingent-fee basis, expended significant time and effort and advanced costs and expenses, without any guarantee of compensation. (Ex. C at ¶ 45.)  Thus, the attorneys' fees in this case were entirely contingent upon the success of this litigation and should not be altered because counsel efficiently resolved this case rather than prolonging the litigation and increasing the potential fees. *See* Manual for Complex Litigation (4th) § 14.121 ("one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation.").

Had this case not settled, the Plaintiffs' Counsel would have vigorously litigated the case without any promise of the success they achieved in reaching the Settlement.  (Ex. C at ¶ 46.) Again, *bona fide* disputes exist between the Parties, the outcome of which remains uncertain. For

example, if the Court determined that the alleged unpaid time was *de minimis* or not compensable, Plaintiffs would be entitled to no recovery. (*Id.*)

Furthermore, society's stake in rewarding attorneys who bring class action wage and hour cases also favors the requested award. In *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947 (S.D. Ohio July 11, 2014), a wage and hour case, the Court found that "the percentage approach is the most appropriate method for determining reasonable attorneys' fees" and awarded 33%, or $1,320,000, of the $4,000,000 settlement fund to counsel. *Id.* at *5. In doing so, this Court found: "Society's stake in rewarding attorneys who bring class action wage and hour cases favors the requested award." *Id.* at *6 (citing *Gentrup v. Renovo Servs., LLC*, No. 1:07–cv–430, 2011 WL 2532922, *4 (S.D. Ohio, June 24, 2011) ("[S]ociety has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

Additionally, the services rendered to the Plaintiffs reflect the substantial experience Plaintiffs' Counsel has with litigating collective and class actions, as explained in the Declaration attached hereto. (*See* Ex. C.) In fact, Plaintiffs' Counsel's one-third fee request has been routinely approved in numerous similar collective and class actions.[4]

---

[4] *See, e.g.*, *Tate v. Greif, Inc., et al.* Case No. 2:21-cv-05099 (S.D. Ohio); *Walker v. Walgreens Specialty Pharmacy, LLC*, Case No. 1:21-cvg-05780 (N.D. Ill.); *Cummings v. A. O. Smith Corporation*, Case No. 2:23-cv-00904 (E.D. Wis.); *Johnson v. Wright Traffic Control, Inc.*, Case No. 2:23-cv-01500 (W.D. Pa.); *English v. Mann+Hummel*, Case No. 1:22-cv-00881 (E.D. Mich.); *Bleich v. Cleveland Brewing Company*, Case No. 1:21-cv-01891-JG (N.D. Ohio); *Etheridge v. Vita-Mix*, Case No. 1:21-cv-0179 (N.D. Ohio); *Viconovic v. Vallourec Star*, Case No. 1:20-cv-1591 (N.D. Ohio); *Klaus v. Humana Pharmacy, Inc.*, Case No. 1:19-cv-01025 (S.D.); *Rosenbohm v. Cellco Partnership*, Case No. 2:17-cv-00731 (S.D. Ohio); *Johnson v. New York Life Insurance Co.*, Case No. 1:19-cv-01898 (N.D. Ohio); *Shumate v. Genesco, Inc.*, et al, Case No. 1:17-cv-03574 (S.D. Ind.); *Grayer, et al. v. Kennametal, Inc.*, Case No. 1:16-cv-01382 (N.D. Ohio); *Allen v. Sutherland Global Services*, Case No. 6:17-cv-6059 (W.D.N.Y); *Lawrence v. Platinum Home Helper*, Case No. 1:17-cv-1479 (N.D. Ohio); *Fullerton v. Golden Flake Snack Foods, Inc.*, Case No. 3:17-cv- 00296 (N.D. Florida); *Miller v. Flowers Baking Co. of Ohio*, Case No. 3:17-cv-725 (N.D.NY.); *Caringi v. Relentless Recovery*, Case No. 1:16-cv-2236 (N.D. Ohio); *Tabor v. A Better Alternative to Senior Care, Inc.,* Case No. 1:16-cv-1281 (N.D. Ohio); *Castro v. Heart Home Care, LLC*, Case No. 1:16-cv-571 (N.D. Ohio); *Bainbridge v. Medline Industries*, Case No. 5:16-cv-00555 (N.D. Ohio); *Terry v. All Hearts Home Health Care*, Case No. 1:16-cv-515 (N.D. Ohio); *Webber v. Nine Energy*, Case No. 4:15-cv-2406 (S.D. Tx.); *Swiger, et al. v. Utz Quality Foods, Inc.*, Case No. 1:15-cv-2196 (M.D. Pa.); *Houston, et. al. v.*

In addition, the litigation expenses sought to be reimbursed are also proper and reasonable. Plaintiffs' Counsel has incurred expenses in the amount of $47,335.48, which includes $31,149.36 for the administration of notice and consent forms in this case; $469.50 in connection with written communications with Plaintiffs, including transmissions of letters, discovery, questionnaires, and declarations; $575 for public records searches; $402 for the filing fee; $893.75 for court reporter fees and deposition transcript; $570 for third-party data entry services; $9,500 for Plaintiffs' share of the first mediation; $3,020.88 for Plaintiffs' share of the second mediation; and $500 for miscellaneous litigation expenses. All expenses were incurred during the course of the litigation of this Action.

Accordingly, the requested payment for attorneys' fees and expenses should be approved.

## C. The Service Award Payments to the Representative Plaintiffs should be approved.

"Service or incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Osman v. Grube, Inc*., No. 3:16-cv-802, 2018 WL 2095172, *2 (N.D. Ohio Feb. 9, 2024). Courts routinely

---

*Progressive Casualty Insurance Co*., Case No. 1:15-cv-01853 (N.D. Ohio); *Hillebrandt, et al. v. Horizontal Wireline Services, LLC, et al*., Case No. 2:15-cv-1307 (W.D. Pa); *Rucker v. Quality Blow Molding,* Case No. 1:15-cv-1039 (N.D. Ohio); *Green v. H.A.D., Inc.,* Case No. 2:15-cv-933 (S.D. Ohio); *Douglas, et al. v. J&K Subway, Inc.,* Case No. 4:14-cv-2621 (N.D. Ohio); *McPherson v. Horseshoe Cleveland*, Case No. 1:14-cv-02475 (N.D. Ohio); *Smith v. CMHA*, Case No. 1:14-cv-1409 (N.D. Ohio); *Armbruster v. City of Cleveland*, Case No. 1:13-cv-2626 (N.D. Ohio); *Williams v. Beckett Air, Inc*., Case No. 1:12-cv-2796 (N.D. Ohio); *Welch v. Incept Corporation*, Case No. 5:12-cv-1775 (N.D. Ohio); *Malaj v. Gohlke*, Case No. 1:11-cv-1578 (N.D. Ohio); *Campbell v. Judson Services*, Case No. 1:11-cv-906 (N.D. Ohio); *Murphy v. 1-800-Flowers*, Case No. 1:10-cv-1822 (N.D. Ohio); *Miller v. National Enterprise Systems*, Case No. 1:10-cv-1664 (N.D. Ohio); *Osolin v. Turocy & Watson LLP*, et al, Case No. 1:09-cv-2935 (N.D. Ohio); *Kelly v. National Enterprise Systems*, Case No. 1:09-cv-2268 (N.D. Ohio); *McNelley v. Aldi*, Case No. 1:09-cv-1868 (N.D. Ohio); *Rotuna v. West Customer Management Group*, Case No. 4:09-cv-1608 (N.D. Ohio); *Jackson v. Papa John's*, Case No. 1:08-cv-2791 (N.D. Ohio); *Dillworth v. Case Farms*, Case No. 5:08-cv-1694 (N.D. Ohio); *Fincham v. Nestlé Prepared Foods Company*, Case No. 1:08-cv-73 (N.D. Ohio); *McGhee v. Allied Waste Industries*, Case No. 1:07-cv-1110 (N.D. Ohio).

authorize service awards as efficacious ways of encouraging individuals to serve as representative plaintiffs and rewarding them for their efforts taken on behalf of the class or collective they represent. *See Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1609, 2010 WL 776933, *7 (N.D. Ohio Mar. 8, 2010); *McFarlin v. Word Enterprises, LLC*, No. 16-CV-12536, 2020 WL 2745300, *2 (E.D. Mich. May 27, 2020).

Here, both Representative Plaintiffs David Fortney and Eli Triplett, the only two (2) named Plaintiffs in this case, provided substantial and effective services while serving as Representative Plaintiffs throughout the five (5) years and six (6) months of this litigation. (Ex. C at ¶ 42). They both, *inter alia*: agreed to bring this Action in their names; provided extensive and critical factual information, including information that assisted Plaintiffs' Counsel in formulating the claims in this case and preparing a detailed, factually specific Complaint; submitted declarations; responded to Interrogatories and Requests for Production of Documents; appeared for depositions; and faithfully engaged in several and extensive communications with Plaintiffs' Counsel throughout the course of this litigation. (*Id.*).

Moreover, Representative Plaintiffs risked their employment reputation by subjecting themselves to the responsibility of serving as the named Plaintiffs in a lawsuit against their former employer. (*Id.* at ¶ 43.) *See Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, *5 (S.D. Ohio Nov. 25, 2019) (noting that "It is important to compensate the work and additional risk that a class representative takes on, particularly in a wage and hour lawsuit", and stating: "[b]ut for an individual worker coming forward to advocate for his fellow workers, many, if not most, wage and hour issues would go unaddressed. A worker who advocates for his or her colleagues assumes substantial risk, including the risk that a prospective employer may be hesitant to hire an employee who sued a past employer. Given that employers can find such

information through a simple internet search, this risk is very real."); *Guippone v. BH S & B Holdings, LLC*, No. 09 CIV. 01029 CM, 2011 WL 5148650, *7 (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Edelen v. Am. Residential Servs*., LLC, No. Civ. A. 11-2744, 2013 WL 3816986, *16 (D. Md. July 22, 2013) (approving incentive payment noting that: "although there is no indication that Mr. Edelen faces any specific challenges in his current or future job prospects as a result of his participation in this lawsuit, there clearly is a risk that he could."); *Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, *1 (S.D.N.Y. Feb. 9, 2010) ("former employees put in jeopardy their ability to depend on the employer for references in connection with future employment."). Service awards "provide an incentive to seek enforcement of the law despite these dangers." *Id.*

Further, in exchange for their Service Award Payments, Representative Plaintiffs will be bound by a general release of claims. *See Yorba v. Barrington School, LLC*, No. 2:21-cv-691, 2022 WL 2436952, *6 (S.D. Ohio July 5, 2022); *Edelen*, 2013 WL 3816986, at *16.

Additionally, the amount requested ($10,000 to each Representative Plaintiff) is certainly within the range that this Court has approved in similar cases. *See, e.g., Smith v. Local Cantina, LLC*, No. 2:20-cv-03064, 2022 WL 1183325, *7 (S.D. Ohio Apr. 19, 2022) (approving $10,000 service award payment to representative plaintiff in wage and hour settlement covering approximately 800 class members in which the total settlement fund was $630,000, stating "[t]he $10,000 incentive award is in line with amounts awarded in similar case."); *McElroy v. Fresh Mark, Inc.,* No. 5:22-cv-287, 2023 WL 7130776 (N.D. Ohio Oct. 30, 2023) (approving $20,000 service award to the representative Plaintiff in wage and hour collective action that settled for $3,725,000.00 on behalf of 7,516 potential plaintiffs); *Arledge v. Domino's Pizza, Inc.,* No. 3:16-

19

cv-386-WHR, 2018 WL 5023950 (S.D. Ohio Oct. 17, 2018) (approving $10,000 service award payment to representative plaintiff in wage and hour action); *Davidson v. Henkel Corp.*, No. 12 Civ. 14103, 2015 WL 13034891 (E.D. Mich. Dec. 8, 2015) (approving $15,000 service award for the named plaintiff from a $3,350,000 settlement fund); *Grayer, et al. v. Kennametal Inc.*, No. 1:16-cv-01382 (N.D. Ohio Nov. 27, 2019) (awarding $20,000 to each representative plaintiff in total settlement of $1,812,500.00).

Accordingly, the requested Service Award Payment to Representative Plaintiffs is reasonable and should be approved.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs request, and Defendant does not oppose, that this Honorable Court approve the Settlement by entering the proposed Order of Dismissal and Approving Settlement attached as Exhibit B.

Respectfully Submitted,

*/s/ Matthew S. Grimsley*
Matthew S. Grimsley (0092942)
Anthony J. Lazzaro (0077962)
Lori M. Griffin (0085241)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
matthew@lazzarolawfirm.com
anthony@lazzarolawfirm.com
lori@lazzarolawfirm.com

Michael L. Fradin (0091739)
8 N. Court St. Suite 403
Athens, Ohio 45701
Phone: 847-986-5889
Facsimile: 847-673-1228
mike@fradinlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 5, 2025, a true copy of the foregoing

was filed electronically and sent to all parties by operation of the Court's electronic filing system.

Parties may access the filing through the Court's system.

*/s/ Matthew S. Grimsley*
Matthew S. Grimsley (Ohio 0092942)

*Attorney for Plaintiffs*